UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                 **Case No.: 8:05-cr-496-T-23MSS**

**JOEL R. VELASCO, *et al*.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court on a Motion to Dismiss the Indictment (Dkt.19)(the "Motion"), filed by Defendant Joel Velasco, in which the other Defendants in this case, Mr. Hans Sigvardsson and Liko, Inc. joined (Dkt. 24) (collectively the "Defendants").[1] This matter was considered further at a hearing on April 17, 2006.

**Background**

All Defendants were charged in a four count indictment with varying violations of the Anti-Kickback Act, 41 USC §§ 51-58 (the "Act"), and, additionally, Mr. Velasco was charged with obstruction of justice.

The charges stemmed from an April 2000, Department of Veteran's Affairs (the "VA") contract which was awarded to Dawson Building Contractors ("DBC") for $20,661,000 to furnish materials for and construct a Spinal Cord Center at the James Haley Veterans Hospital in Tampa, Florida (the "Prime Contract"). According to the allegations, DBC served as the prime contractor for this project. Mr. Velasco was an employee of DBC and served as project manager for the Spinal Cord Center project.

---

[1] Pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b), this matter was referred to the Undersigned for a Report and Recommendation (Dkt. 25).

Liko, Inc., a Massachusetts based corporation, was engaged in the business of marketing and installing patient lift systems. Liko, Inc. was awarded a sub-contract to provide material and labor for the installation of a patient lift system under the Spinal Cord Injury Center's Prime Contract. Mr. Hans Sigvardsson was the President of Liko, Inc. Mr. Peter Castelli, who is not named in the indictment, was employed by Liko, Inc. as its Vice-President of Sales, Overhead & Lifting Systems.

The Government charges that Mr. Sigvardsson and Mr. Castelli agreed to pay Mr. Velasco a "kickback" of $63,000.00 to obtain or reward the granting of the subcontract for the Spinal Cord Center project. This alleged "kickback" was included in the contract price charged by Liko, Inc. In order to obtain the money to pay the alleged "kickback," Mr.Velasco and Mr. Castelli allegedly submitted false and fraudulent statements to DBC and the VA. The Government alleges that after the funds for the "kickback" were secured, Mr. Sigvardsson caused Liko, Inc. to deposit $71,570.00, characterized as a bonus, into a bank account controlled by Mr. Castelli. According to the Government, from those funds, Mr. Castelli paid Mr. Velasco $63,000.00. The Government contends that these facts support the various charges alleged in the indictment.

In Count One the Government alleges that from November 2000 through January 2001, Defendants and Mr. Castelli engaged in a conspiracy to defraud the United States in violation of 18 USC § 371.

In Count Two the Government alleges that Defendants, Hans Sigvardsson and Liko, Inc. provided a cashier's check for $63,000.00 to Mr. Velasco for the purpose of improperly obtaining or rewarding favorable treatment in connection with the subcontract (i.e. paying a kickback) in violation of 41 USC § 53(1) and 18 USC § 2.

In Count Three the Government alleges that Mr. Velasco accepted a "kickback" in the form a $63,000.00 cashier's check in violation of 41 USC § 53(2).

Finally, in Count Four, the Government alleges that in March 2005, Mr. Velasco falsified and caused to be falsified a document, a back-dated employment contract, apparently to justify the payment received, with the intent to impede, obstruct and influence the investigation being conducted by the Office of the Inspector General of the VA in violation of 18 USC § 1519 and 2.

**Legislative History of and Defined Terms in the Act**

As Defendants note in their Motion, Congress in 1946 "concerned that employees of prime contractors on certain government procurement contracts were being bribed to enter into inflated subcontracts for which the government ultimately paid – passed the [Act] . . . to bring such conduct within the purview of federal prosecution" (Dkt. 19 at 2, citing to H.R. Rep. No. 79-212 (1945), *as reprinted in* 1946 U.S.C.C.A.N 1081). In 1960, Congress amended the Act to cover all negotiated federal contracts expanding its reach beyond cost reimbursable contracts as it was limited when the Act was originally enacted. In 1986, Congress again amended the Act to apply it generally to "all Federal contracts." (Dkt. 19 at 2, citing H.R. Rep. No. 99-964, at 4 (1986), *as reprinted in* 1987 U.S.C.C.A.N. at 5962).

The purpose of the 1986 amendments was explained in the House Report accompanying the amendments: They were promulgated to "enhance the Government's ability to prevent and prosecute kickback practices. These practices have become a pervasive problem in Federal procurement. This form of commercial bribery has tremendous impact. Kickbacks directly inflate contract costs paid by the taxpayer. Kickbacks destroy competition and they foster corruption." Id. In addition, the House

3

Report suggested that Congress intended the Act to reach what would otherwise be illegal bribery if the recipient of the "kickback" were a government employee:

> Payments made to employees or officials of the government in order to obtain favorable treatment by the government on contracting or other matters are prohibited under the Federal bribery statute, 18 USC § 701. Bribes made to employees of a company with a contractual relationship to the government (either directly as a prime contractor, or indirectly as a subcontractor are termed kickbacks and governed by the Anti-Kickback Act, 41 USC §§ 51-54.

<u>United States of America v. Dynamics Research Corporation</u>, 2004 WL 3643480, *5-6 (D. Mass, October 1, 2004) (citing H. Rep. No. 99-964, at 5 (1986), *as reprinted in* 1987 U.S.C.C.A.N. 5961, 5962).

Section 52(2) of Title 41 defines a "kickback" as, "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided directly or indirectly, to any prime contractor, prime contractor employee, subcontractor or subcontractor employee for the purpose of improperly obtaining or rewarding any favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract."

The House Report discussing the 1986 amendments makes clear that when the Act was amended the intention was that the definition of "favorable treatment" used in the above cited definition of "kickback" was to be construed "to reach all instances of behavior which constitute a commercial bribe in connection with a government contract." H. Rep. No. 99-964, at 12. The House Report also makes clear that the term "improperly" was included "to ensure that exchange[s] made which are authorized by the contract itself, such as additional payments made under acceleration provisions, or for other permissible purposes, such as innocent or incidental favors, are not included under the definition of "kickback." <u>Id</u>. at 11.

**Discussion**

Defendant, Mr. Velasco claims that Counts One and Three fail to state offenses; and Sections 52-54 of Title 41 are unconstitutionally vague and overbroad as applied. Specifically, Mr. Velasco argues on behalf of Defendants that the term "improperly" is vague and overbroad because the statute does not contain a definition of the term. Defendants compare the use of the word improperly to the use of the word "corruptly" in United States v. Farrell, 126 F.3d 484 (3d Cir. 1997). In Farrell, the court found that the word "corruptly" had no meaning apparent from the face of the statute and thus rendered that portion of the statute void for vagueness.

In addition, Mr. Velasco requests that the principle of lenity be applied in his case because Sections 52-54 of Title 41, as well as 18 USC § 1519 are ambiguous. Further, Mr. Velasco asserts generally various policy based arguments against the validity of the Act and its application to the type of Federal Government contract at issue in this case. More specifically, he contends that the Act should not be applied to flat bid contracts such as the one at issue here. He contends that the Government has no legal interest in such contracts once the bid has been accepted because any incremental cost differential within the contract for paying "kickbacks" would not change the Government's costs under the contract.

Mr. Velasco argues additionally that he did not have the power to influence the granting of a subcontract and, thus, cannot be convicted of accepting a "kickback." Finally, Mr. Velasco contends that he cannot be convicted of a conspiracy because the Government has not sustained property or pecuniary loss by the fraud alleged. Defendants, Mr. Sigvardsson and Liko, Inc. joined in Mr. Velasco's Motion as to Counts One and Two.

In its response, the Government argues correctly that the instant prosecution under the Act does not impinge upon or restrict constitutionally protected conduct. Thus, citing <u>Village of Hoffman, et al. v. Flipside, Hoffman Estates, Inc.</u>, 455 US 489, 494 (1981), the Government argues that because Defendants' acts if proven would be improper and clearly proscribed under any definition they lack standing to "complain of the vagueness of the law as applied to the conduct of others." <u>Village of Hoffman</u>, 455 US at 494. Additionally, the Government points out that the statute in question has a specific scienter requirement that requires the Government to prove that Defendants acted knowingly and willfully in violation of the Act. In this regard, the Supreme Court has "recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." <u>Village of Hoffman</u>, 455 US at 499. That is, because the Government must prove Defendants' actual knowledge, their claim of vagueness may be asserted as a defense but does not bar prosecution under the statute on grounds of unconstitutional vagueness. <u>Village of Hoffman</u>, 455 US at 498. <u>See also</u> <u>Colutti v. Franklin</u>, 439 US 379, 395 n.13 (1979) in which the Supreme Court stated:

> [T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid . . . . The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition for the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

The Government also notes that 18 USC § 1519 reads:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under Title

6

> 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than twenty years or both.

The Government argues that this provision is clear on its face, contains easily understandable terms and lists prohibited activity and, like the Anti-Kickback Act, contains a specific scienter requirement.

After reviewing the parties' submissions, the Undersigned scheduled a hearing to permit counsel generally to make oral presentations and specifically to permit Defendants to reply to the arguments raised in the Government's response.

None of the counsel present for the three moving Defendants had any additional arguments to make in response to the binding precedent cited by the Government.  In addition, Mr. Velasco's counsel indicated that he filed the Motion mainly because he had an "obligation to his client" to do so.  Finally, Mr. Velasco's counsel acknowledged that the policy arguments made to limit application of the Act to cost plus contracts is unavailing because, as noted above,  the Act, as amended, expressly applies to all Federal contracts.

Upon review of the parties' filed material and presentations made during the April 17, 2006, hearing, the Court Reports and Recommends that Defendants' Motion to Dismiss (Dkt. 19) be **DENIED** and that the indictment proceed as alleged.

As noted above, Defendants are unable to overcome the Government's primary arguments made in opposition to the Motion. First, Defendants cannot establish that their conduct if proven would not fall within the clearly proscribed improper payment as contemplated by the Act.  That is, if Defendants arranged for surreptitious payment to Defendant Velasco to obtain or reward him for Liko, Inc's successful award of the subcontract with no concomitant value received and falsified documents to conceal the

payments, such payment would unambiguously be "unlawful" under the Act. Additionally, the Undersigned finds persuasive the Government's argument that the presence of a scienter requirements cures any potential vagueness issue raised by these Defendants. Because the Government will have to prove the Defendants' knowingly and willfully violated the statutes at issue under the facts of this particular case, any alleged "vagueness" or ambiguity in the statute will be cured by the Governments proof or resolved by a successful defense. Village of Hoffman, 455 US at 498. See also Colutti v. Franklin, 439 US 379, 395 n.13 (1979). Thus, Defendants have no standing to challenge the Act as ambiguous as applied. Village of Hoffman, 455 US 498.

Further, as noted above, the policy arguments raised by Mr. Velasco are unpersuasive because the Act expressly applies to all Federal contracts. See 41 U.S.C.A. § 52(4) (defining "prime contract" as a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment or services of any kind"). Moreover, the Government's interest in the proper use of funds allocated to build a Government facility is facially evident.

Although not discussed during the April 17 hearing, the Undersigned also finds the remainder of Defendants' arguments unpersuasive. First, Mr. Velasco argued that lenity should apply in his case. Lenity is only at issue if "[a]fter seiz[ing] every thing from which aid can be derived" to construe a statute, the Court is "left with an ambiguous statute." Moskal v. United States, 498 US 103, 108 (1990)(citing United States v. Fisher, 2 Cranch 358, 386 (1805)). Or stated differently, "the doctrine that ambiguity or uncertainty in a criminal statute must be construed in favor of the defendant is only an aid to construction and cannot be invoked until the statute is shown to be ambiguous or

8

uncertain as applied to the particular defendant." People v. Alday, 110 Cal. Rptr. 617, 618 (Cal. S. Ct. 1973).  In this case, however, as the Government has argued, even if Defendants could prove the statute is ambiguous, the scienter requirement fully addresses this problem.  No lenity need be invoked as no conviction could be obtained because the statute will not "ensnare those with no knowledge that their actions were proscribed" (Dkt. 22 at 3).  See e.g., United States v. Royal Caribbean Cruises, Ltd., 11 F. Supp. 2d 1358, 1366 (1998)(distinguishing the dismissal of a case on lenity grounds where proof of scienter required by the statute at issue); see also Boyce Motor Lines v. United States, 72 S.Ct. 329, 321-32 (1952) (declining to apply lenity where "[t]he statute punishes only those who knowingly violate the Regulation.  This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that the application of the Regulation would be so unfair that it must be held invalid.").

     Mr. Velasco's  argument that because he did not have the power to influence the grant of a prime contract or subcontract, he could not have received a "kickback" is likewise unavailing.  In support of this argument, Mr. Velasco relied on the unpublished decision, United States v. Metzinger, E.D. Pa. No. 94-7520 (1995), for the proposition that "[i]n order for a payment to be a kickback within the Act, it must be made to an individual with the power to influence the grant of a prime government contract or subcontract.  In other words, the payment must be an inducement for the individual to give the contract to the paying party" (Dkt. 19 at 11).  Although the Government did not directly address this issue, the Government does allege in the indictment, and Mr. Velasco does not dispute, that he was the project manager for the Spinal Cord Center project.  Whether, as project manager, Mr. Velasco would have had the opportunity to

9

exert influence over the grant of the subcontract to Liko, Inc. and Mr. Sigvardsson is a matter of factual dispute that will undoubtedly be addressed at trial. Such a determination cannot be reached on a motion to dismiss. Moreover, the statute proscribes improper conduct to obtain or *reward* favorable treatment in connection with the grant of a subcontract. Thus, Metzinger, if persuasive at all, does not address Mr. Velasco's alleged role as the beneficiary of said reward.

Finally, Defendants argument that the conspiracy charge under 18 USC § 371 cannot proceed unless the Government can point to some lawful function that has been impaired, obstructed or defeated or to some property or pecuniary loss sustained by the Government due to Defendants' conduct misstates the law. As the Government noted in its response, it has alleged both pecuniary harm and interference with its lawful function in the indictment (Dkt. 1 at 2-3) and it need not demonstrate both of these factors to prevail. Further, 18 USC § 371 can be violated by an agreement to inflict either harm.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 3rd day of May 2006.

_____
MARY S. SCRIVEN
United States Magistrate Judge

Copies to:
Counsel of Record

### NOTICE TO PARTIES

Contrary to the Court's *ore tenus* ruling, the parties are granted a full ten (10) days from the date of entry to object to the foregoing Report and Recommendation. Failure to file written objections to the proposed findings and recommendations contained within this

report within ten (10) days, shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).